## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DR. PAM ADAMSON, WANDA
SMITH, OPHELIA
BURROUGHS, MARY BAKER,
DR. ALIEKA ANDERSON and
CHARLTON BIVINS, in their
official capacities as members of
the Clayton County Board of
Education and individually as
residents and voters in the Clayton
County School District,

      Plaintiffs,

v.

CLAYTON COUNTY
ELECTIONS AND
REGISTRATION BOARD,
ROBERT P. BOLIA, PATRICIA
PULLAR, RUTH F. ASH,
VIVIAN BALDWIN AND JIM
CONSTABLE, in their official
capacities as members of the
Clayton County Elections and
Registration Board,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

FILE NO. 1:12-cv-01665-CAP

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT AND FINAL INJUNCTIVE RELIEF

**COME NOW,** DR. PAM ADAMSON, WANDA SMITH, OPHELIA

BURROUGHS, MARY BAKER, DR. ALIEKA ANDERSON and CHARLTON

1

BIVINS, in their official capacities as members of the Clayton County Board of Education and individually as residents and voters in the Clayton County School District, Plaintiffs in the above-styled action ("Plaintiffs"), and respectfully move the Court to adopt new voting districts for the Clayton County Board of Education (hereinafter referred to as the "BOE"), showing the Court as follows:

## STATEMENT OF FACTS

### Introduction

This is an action challenging the constitutionality of the current Clayton County Board of Education Member Districts ("BOE Districts"). This constitutional challenge is brought under 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution, as well as the Constitution of the State of Georgia, inasmuch as the present BOE Districts are so disproportionate in population that they violate the principle of "one person, one vote" and the continued use of such districts cannot be justified as furthering a compelling governmental interest.

### Establishment of Current BOE Districts

Pursuant to that certain Act approved October 25, 2001, Ga. Laws 2001, p. 732, which Act was precleared by the United States Department of Justice on or about July 16, 2002, the Clayton County School District is comprised of nine (9)

education districts, and one member of the Clayton County Board of Education is elected to serve from each district. A copy of the Act is attached hereto as Exhibit "A."

Clayton County has nine (9) BOE districts[1], with each member of the BOE in the following districts:

| DISTRICT | MEMBER | ADDRESS |
|---|---|---|
| 1 | DR. PAM ADAMSON | 11300 Turner Road Hampton, GA 30228 |
| 2 | WANDA SMITH | 8143 Winewood Way Riverdale, GA 30274 |
| 3 | JESSIE GOREE | 6648 Meadowlark Drive Riverdale, GA 30296 |
| 4 | MICHAEL KING | 5581 Aspen Drive College Park, GA 30349 |
| 5 | OPHELIA BURROUGHS | 7545 Montego Court Riverdale, GA 30274 |
| 6 | MARY BAKER | 7619 Highland Park Drive Jonesboro, GA 30236 |
| 7 | TRINIA GARRETT | 5207 Phillips Drive Lake City, GA 30260 |
| 8 | DR. ALIEKA | 2532 Brookgate Crossing |

---

[1] Clayton is permitted to have a nine (9) member BOE notwithstanding O.C.G.A. § 20-2-52 since it existed as a nine (9) member BOE as provided by local law prior to July 1, 2010. (See Exhibit "A" attached hereto). Consequently, and according to O.C.G.A. § 20-2-52 (b), O.C.G.A. § 20-2-52 does not apply to the Clayton County BOE. Moreover, since Clayton County does not collect a homestead option sales and use tax ("HOST") (See Sales Tax Rate Chart available on the Georgia Department of Revenue's web site at https://etax.dor.ga.gov/salestax/salestaxrates/LGS_2011_Jan_Rate_Chart_Moore.pdf and attached hereto as Exhibit "B"), it is not restricted to being a seven (7) member BOE. See O.C.G.A. § 20-2-52.1(a).

| | ANDERSON | Ellenwood, GA 30294 |
|---|---|---|
| 9 | CHARLTON BIVINS | 1802 Central Park Loop Morrow, GA 30260 |

(See Complaint[2], Doc. 1, at ¶ 9).

## 2010 Decennial Census Data and Unconstitutionality of Current BOE Districts

The Clayton County BOE Districts, as presently configured[3], contain the following populations:

| DISTRICT | POPULATION |
|---|---|
| 1 | 37,680 |
| 2 | 30,158 |
| 3 | 26,606 |
| 4 | 21,602 |
| 5 | 24,622 |
| 6 | 32,066 |
| 7 | 25,448 |

---

[2] Plaintiffs Complaint is a verified Complaint. (See Docs. 4-7).
[3] See Affidavit of Mark Oestreich (hereinafter referred to as the "Oestreich Affid.," attached hereto as Exhibit "C" at ¶ 5). Plaintiffs are also filing, over the counter in the Clerk's Office, a larger map with which includes the BOE members' home addresses and locations, which will be Exhibit "G." Plaintiffs are also filing, over the counter in the Clerk's Office, an electronic copy of the data files for the BOE map as Exhibit "H."

| | |
|---|---|
| 8 | 26,914 |
| 9 | 34,328 |

(Id. at ¶ 18). Based on the above figures, the voting strength of District 1, 2, 6 and 9 voters is severely diluted, while voters in Districts 3, 4, 5, 7 and 8 have disproportionate voting strength. (Id. at ¶ 19). Unless new BOE District boundary lines are established, BOE members will be elected from unconstitutionally malapportioned districts. (Id. at ¶ 21).

Use of the present BOE districts with their gross imbalance in population is so irrational on its face that its natural result will be to deprive voters of the benefit of the one person - one vote principle since the BOE districts were created without regard to current population. (Id. at ¶ 22). The effect of leaving the existing BOE District lines in place will be to treat voters unequally, in contravention of the Equal Protection Clause and the "one person, one vote" principle. (Id. at ¶ 23).

## **BOE's Proposed New Districts**

In order to account for the population shifts and to equalize the size of the BOE districts, the BOE prepared a map containing new boundaries of the nine (9) BOE districts based solely upon the population of Clayton County. (Id. at ¶

13). This plan resulted in a new map for the District lines. (See Oestreich Affid. at ¶ 7, Exhibit "G" and Exhibit "H"). Under the proposed plan, the following proposed BOE districts will have the following populations based on the 2010 Census data[4]:

| DISTRICT | POPULATION |
|----------|-----------|
| 1 | 28,291 |
| 2 | 28,954 |
| 3 | 28,316 |
| 4 | 29,009 |
| 5 | 29,011 |
| 6 | 28,837 |
| 7 | 28,353 |
| 8 | 29,353 |
| 9 | 29,300 |

(Id.).

The BOE's plan achieves a less than two percent (2%) deviation in the populations of each district. The BOE's plan was presented to the Clayton County

_____

[4] See Exhibit "C" attached hereto at ¶ 6.

delegation of the 2012 General Assembly on February 15, 2012. (Id. at ¶ 16). A copy of the letter presenting the plan is attached hereto as Exhibit "D." The BOE discussed the proposed redistricting plan in its public work session on January 30, 2012, and then adopted the plan in open public session on February 6, 2012 (See Exhibit "E"). A copy of the excerpt from the BOE meeting and the Resolution adopted by the BOE are attached hereto as Exhibit "E." Copies of local newspaper articles discussing the redistricting are attached hereto as Exhibit "F."

While the BOE can submit and in fact did submit a redistricting plan to the Clayton County delegation of the 2012 General Assembly, only the Georgia General Assembly can reapportion the Clayton County BOE districts during a regular or special session. (Id. at ¶ 17) and Smith v. Cobb County Bd. Of Elections and Registrations, 314 F. Supp.2d 1274, 1290 (N.D. Ga. 2002). Although the 2012 regular session of the General Assembly has ended, no reapportionment plan for the Clayton County BOE Districts has been adopted and no special session for the purpose of reapportioning these districts has been called by the Governor. (Complaint at ¶ 17). Consequently, this resulted in no new BOE Districts being passed to conform to 2010 Decennial census figures. (Id.).

## ARGUMENT AND CITATION OF AUTHORITY

**I.** **The Current Map Of Clayton County School District's Nine Voting Districts Is Unconstitutional And Must Be Redrawn Since It Violates the One Person-One Vote Requirement.**

Due to material shifts in the populations within the BOE districts over the past decade, as evidenced by the most recent United State decennial Census, the number of citizens included in each BOE district is not equal. The nine BOE districts have not been reapportioned after the 2010 census.

To determine whether there is a violation of the one person-one vote principle, the court looks to the total population, not the voting age population. See Smith, 314 F. Supp.2d at 1296 at n. 19. The education districts, as presently configured, contain the following total populations:

| DISTRICT | POPULATION | % DEVIATION |
|----------|-----------|-------------|
| 1 | 37,680 | 30.72% |
| 2 | 30,158 | 4.62% |
| 3 | 26,606 | -7.70% |
| 4 | 21,602 | -25.06% |
| 5 | 24,622 | -14.58% |
| 6 | 32,066 | 11.24% |

| | | |
|---|---|---|
| 7 | 25,448 | -11.72% |
| 8 | 26,914 | -6.63% |
| 9 | 34,328 | 19.09% |

Based on the above figures, the voting strength of District 1, 2, 6 and 9 voters is severely diluted, while voters in Districts 3, 4, 5, 7 and 8 have disproportionate voting strength.

Under the Fourteenth Amendment to the United States Constitution, it is unlawful for a state to create districts for public office with a gross imbalance in population. The geographic boundaries for the existing BOE districts are not drawn so that equal number of voters will be voting for a proportionally equal number of officials. The substantial differences in the populations of the BOE districts under the existing plan violate the principal of "one-person, one vote." Consequently, the current map is unconstitutional and must be redrawn.

## II.  Plaintiffs' Proposed Map And Plan.

The BOE does not have the legal authority to create new voting districts. See Smith, 314 F.Supp.2d at 1262. Accordingly, Plaintiffs ask the Court to draw a remedial plan, taking into consideration the BOE map drawn and approved by the BOE. The Court is entitled to consider Plaintiffs' proposed plan in drawing the

Court's map. See Id. at 1291. Additionally, so long as the Court makes an independent, *de novo* decision as to the appropriate map, such that the plan is the Court's own, its plan does not have to be precleared. See Id. at 1295. In preparing the Court's plan, the most important goal is to minimize the population deviations among the BOE's nine districts, while also respecting the traditional districting principles of compactness, contiguity, the preservation of the core of the existing districts, and the preservation of significant political and geographic subdivisions, whenever possible. See Abrams v. Johnson, 521 U.S. 74, 95, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997). Where school board redistricting is involved, the court also takes into consideration adherence as much as possible to the school attendance zones in creating districts. See Smith, 314 F. Supp.2d at 1307.

Plaintiffs submit their proposed map in an attempt to assist the Court to conduct its own, *de novo*, decision in formulating a new map and plan. In doing so, Plaintiffs do not mean to suggest that Plaintiffs' map must be the plan that the Court adopts.

A. **Plaintiffs' proposed redistricting map is constitutional and complies with the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973c *et. Seq.***

The BOE devised and adopted a redistricting plan on February 6, 2012, based upon 2010 census results. This plan, a copy of which is attached hereto as Exhibit "D," proposed the following populations for each educational district:

| DISTRICT | POPULATION | % DEVIATION |
|:---:|---:|---:|
| 1 | 28,291 | -1.85% |
| 2 | 28,954 | 0.45% |
| 3 | 28,316 | -1.77% |
| 4 | 29,009 | 0.64% |
| 5 | 29,011 | 0.65% |
| 6 | 28,837 | 0.04% |
| 7 | 28,353 | -1.64% |
| 8 | 29,353 | 1.83% |
| 9 | 29,300 | 1.65% |

Stated another way, the 2010 Census data shows the following for the existing districts and the proposed districts:

| | | Existing | Proposed |
|---|---|---:|---:|
| District 1 | Total | 37680 | 28291 |
| | Dev. | +30.72% | -1.85% |
| | BVAP | 44.73% | 45.92% |
| District 2 | Total | 30158 | 28954 |
| | Dev. | +4.62% | +0.45% |
| | BVAP | 54.45% | 52.39% |
| District 3 | Total | 26606 | 28316 |
| | Dev. | -7.70% | -1.77% |
| | BVAP | 61.06% | 56.01% |

| District 4 | Total | 21602 | 29009 |
| | Dev. | -25.06% | +0.64% |
| | BVAP | 46.97% | 52.24% |
| District 5 | Total | 24622 | 29011 |
| | Dev. | -14.58% | +0.65% |
| | BVAP | 44.91% | 45.12% |
| District 6 | Total | 32066 | 28837 |
| | Dev. | +11.24% | +0.04% |
| | BVAP | 45.25% | 44.73% |
| District 7 | Total | 25448 | 28353 |
| | Dev. | -11.72% | -1.64% |
| | BVAP | 30.27% | 31.83% |
| District 8 | Total | 26914 | 29353 |
| | Dev. | -6.63% | +1.83% |
| | BVAP | 39.12% | 45.25% |
| District 9 | Total | 34328 | 29300 |
| | Dev. | +19.09% | +1.65% |
| | BVAP | 45.89% | 40.09% |

Plaintiffs' support the redistricting plan drawn by the BOE and move this Court to approve and implement new proposed boundaries taking into consideration those contained within the BOE proposed plan. As outlined below, the BOE proposed map is constitutional and complies with the Voting Rights Act.

1. Plaintiffs' Proposed Map Complies With Section 5 of the Voting Rights Act.

In order to comply with Section 5 of the Voting Rights Act, a change in voting districts must not create retrogression in minority voting strength and, in

most instances, the change must be precleared with either the Department of Justice or the D.C. District Court. See Smith, 314 F. Supp.2d at 1293-94.

### a. No Preclearance Is Required.

Section 5's preclearance requirement does not apply to courts when creating remedial apportionment plans. See Connor v. Johnson, 402 U.S. 690, 691, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971). As long as this Court makes its own, *de novo* decision as to a remedial apportionment plan, Section 5's preclearance requirement is not triggered. See Smith, 314 F. Supp.2d at 1294.

### b. Plaintiffs' Plan Does Not Create Retrogression.

A proposed redistricting plan is discriminatory or retrogressive if its net effect would be to reduce minority voters "effective exercise of the electoral franchise" when compared to the benchmark plan. Beer v. United States, 425 U.S. 130, 141, 96 S. Ct. 1357, 47 L.Ed.2d 629 (1976). Thus, the proposed plan must not significantly impair the voting rights of minorities or persons in a language minority group defined in the Act, in comparison to the existing plan. See Smith, 314 F. Supp.2d at 1296. The redistricting plan proposed by Plaintiffs does not reduce minority voting strength, fragment minorities among different districts, or otherwise have the effect of denying or abridging the right to vote on account of race or color or membership in a language minority group defined in the Act.

The analysis of whether a proposed change in an apportionment plan violates the non-retrogression rule begins by identifying an appropriate "benchmark" by which to gauge whether the proposed plan "retrogresses" from the previous plan. See Id. In determining retrogression and voter dilution under Sections 2 and 5 of the Voting Rights Act, courts typically look only to the black voting age population ("BVAP"), not the total black population. See Id at 1296, n. 19. Plaintiffs submit that the appropriate "benchmark" in this case is the BVAP as the 2010 Census indicates it now exists, under the current voting districts for the BOE. See Smith, 314 F. Supp.2d at 1297.

According to the 2010 Census, the BVAP percentages for the existing and proposed districts are as follows:

| DISTRICT | BVAP (Existing Dist.) | BVAP (Proposed Dist.) | CHANGE (Based on Proposed Distr.'s) |
|----------|-----------------------|-----------------------|-------------------------------------|
| 1 | 44.73 | 45.92 | +1.19 |
| 2 | 54.45 | 52.39 | -2.06 |
| 3 | 61.06 | 56.01 | -5.05 |
| 4 | 46.97 | 52.25 | +5.28 |
| 5 | 44.91 | 45.12 | +0.21 |
| 6 | 45.25 | 44.73 | -0.52 |
| 7 | 30.27 | 31.83 | +1.56 |
| 8 | 39.12 | 45.25 | +6.13 |
| 9 | 45.89 | 40.09 | -5.80 |

Under the existing voting districts, the BVAP comprises the majority voting age population in Districts 2 and 3. Under Plaintiffs' proposed boundaries, BVAP will comprise the majority voting age population in Districts 2, 3 and 4. Thus, BVAP is actually increased under the proposed redistricting plan. Additionally, pursuant to the Plaintiffs' proposed plan, the BVAP increased in five of the nine voting districts. Of the four districts in which the BVAP decreased, the decreases were de minimus, ranging from a low of 0.52% to a high of 5.05%. Moreover, in Districts 2 and 3, despite the BVAP decreases, Blacks maintain their majority under the Plaintiffs' proposed plan. In District 6, Blacks did not have a majority either before or after the Plaintiffs' proposed plan, and the decrease was only 0.52%. The determination of whether a percentage decrease is retrogressive is based on the effect of the decrease on the BVAP.

In the <u>Smith</u> case, the court, faced with a 7% reduction in BVAP in one voting district, explained:

> The Court does not know whether the Department of Justice or the D.C. District Court would hold that this diminution of BVAP constitutes retrogression, had this question been presented to them. Again, as the matter was not briefed by either side, the Court is not even familiar with the standards that those bodies employ to decide the question. Clearly, had the proposed plan reduced BVAP from 51% to 44%, intervenors would have a stronger argument that the proposed plan had created retrogression, as it would have converted the district from a majority black district to a minority black district. Conversely,

had the plan reduced the BVAP in a district from 15% to 8% or from 72% to 65%, the Court doubts that there could be any argument that retrogression had occurred, as a 7% reduction would not alter the result in a district where blacks were either a small minority or a super majority. A reduction of BVAP from 31% to 24% is somewhere between the above two extremes. Thus, the fact that the BVAP has decreased in a particular district is not necessarily dispositive. Indeed, the intervenors' own plan creates a slight reduction in BVAP in District Four from where it is now under the 1992 plan.

Smith, 314 F. Supp.2d at 1298.

Based on Smith, Plaintiffs submit that their proposed plan does not create "retrogression."

Note that other minority groups including the Hispanic/Latino and Asian American population are located throughout the District. (See Exhibit C at Exhibits "1" and "2"). The most concentrated area of the Hispanic/Latino population is within BOE District 7 in which Hispanic/Latinos comprise 30.32% of the population; and the existing area of least concentration is District 3 in which Hispanic/Latinos comprise only 4.54% of the population. Since Hispanic/Latino residents are not concentrated in a single area, it would be impossible to create a Hispanic/Latino majority BOE district which is within required deviations. Under the proposed plan, however, all Hispanic/Latino representation is generally increased in each District, with only a minor decrease of 1.95% of population in District 7.

The Asian American population is spread throughout the County and only comprises 4.98% of the total County population, and less than 10% of any BOE voting district. Thus, it is not possible to create an Asian American majority BOE district which is within required deviations. The proposed redistricting does not, however significantly impact or decrease Asian American voter strength.

2. Plaintiffs' Proposed Plan Meets The Requirements of Section 2 of The Voting Rights Act.

Under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973c, a proposed redistricting plan must not have a discriminatory purpose or a discriminatory effect of denying or abridging the right to vote on account of race or color or membership in a language minority group defined in the Act. Language minorities or language minority group is used, as defined in the Act, to refer to persons who are American Indian, Asian American, Alaskan Natives, or of Spanish heritage. (Sections 14(c)(3) and 203(e)).

In analyzing whether a particular apportionment plan complies with Section 2, a court must consider whether, under the totality of the circumstances, minorities have been granted an equal opportunity to participate in the political process and to elect representatives of their choice. 42 U.S.C. § 1973(b) and Abrams v. Johnson, 521 U.S. 74, 91, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997).

In order to show a violation of Section 2 of the Voting Rights Act where single-member voting districts are involved, a party must show that (i) the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district, (ii) the minority group is "politically cohesive" and (iii) the majority votes sufficiently as a bloc to enable it to defeat the minority's preferred candidate. Abrams, 521 U.S. at 90-91, *citing* Thornburg v. Gingles, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986).

> a. No reductions in BVAP resulting from the Plaintiffs' proposed plan eliminate Black majority in any voting district.

Under the existing districts, there are two Black majority districts (Districts 2 and 3). As stated above, under the Plaintiffs' proposed plan, a third, majority Black district is created (District 4).

It is clear that when the BOE re-drew the district lines, race was not the motivating factor. As a result, there is no violation of the first prong of the test stated in Gingles.

b. No Black minority group is "politically cohesive" and No majority votes sufficiently as a bloc to enable it to defeat the minority's preferred candidate.

There is no evidence supporting the second or third prong under <u>Gingles</u>. Under the existing Districts, Whites have no majority in any District. Despite this, there are two White members of the BOE[5] (Dr. Adamson in District 1 and Ms. Baker in District 6). If Blacks voted as a "politically cohesive" group in those two Districts, one would presume they would elect a Black candidate.

There is no evidence to support the third prong under <u>Gingles</u> since Whites do not have a majority in any of the voting Districts. The greatest number of White Voting Age Population ("WVAP"), under the current Districts, is in District 6, where the WVAP is only 21.83%. Under the proposed plan, the highest WVAP is in District 6, and it only increases to 23.81%.

In addition, one of the considerations the Court is to examine under the third <u>Gingles</u> factor is incumbency. See <u>Gingles</u>, 478 U.S. at 57. Plaintiffs WANDA SMITH (District 2), OPHELIA BURROUGHS (District 5) and MARY BAKER's (District 6) seats on the BOE are up for re-election in 2012. (See Complaint, Doc. 1, at ¶ 8). The Plaintiffs' proposal would make the following changes in BVAP in those Districts:

---

[5] All of the remaining seven members of the BOE are Black.

| DISTRICT | BVAP (Existing District) | BVAP (Proposed District) |
|:---:|:---:|:---:|
| 2 | 54.45% | 52.39% |
| 5 | 44.91% | 45.12% |
| 6 | 45.25% | 44.73% |

BVAP slightly decreases in District 2, but Blacks maintain a majority. BVAP increases in District 5. BVAP slightly decreases in District 6, but Blacks do not have a majority in that District even under the current district lines.

Accordingly, there is no evidence to support the third prong under Gingles.

## CONCLUSION

Qualifying for elections for the BOE was scheduled for May 23, 2012, with primary elections on July 31, 2012. Absent a new redistricting map, the Elections Board cannot qualify candidates for these positions using current district boundaries since the current districts are unconstitutional. Accordingly, this Court should draw a remedial plan taking into consideration Plaintiffs' proposed map.

As outlined hereinabove, Plaintiffs' proposed map does not reduce minority voting strength, fragment minority concentrations, or otherwise deny or abridge the right to vote on account of race, color, or membership in a minority group as defined in the Voting Rights Act of 1965. A new map which is similar to Plaintiffs should, therefore, satisfy the Voting Rights Act.

Respectfully submitted this 8th day of June, 2012.

**BROCK, CLAY, CALHOUN & ROGERS, LLC**
Attorney for Plaintiffs

*/s/ Todd E. Hatcher*
Todd E. Hatcher, Esq.
Georgia Bar No. 337507
thatcher@brockclay.com
400 Galleria Parkway
Suite 1440
Atlanta, GA 30339
Telephone: (770) 422-1776
Facsimile: (678) 784-3572

| | | |
|---|---|---|
| DR. PAM ADAMSON, WANDA SMITH, OPHELIA BURROUGHS, MARY BAKER, DR. ALIEKA ANDERSON and CHARLTON BIVINS, in their official capacities as members of the Clayton County Board of Education and individually as residents and voters in the Clayton County School District, | : : : : : : : : : : | CIVIL ACTION FILE NO. 1:12-cv-01665-CAP |
| Plaintiffs, | : : | |
| v. | : : : | |
| CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH, VIVIAN BALDWIN AND JIM CONSTABLE, in their official capacities as members of the Clayton County Elections and Registration Board, | : : : : : : : : : : | |
| Defendants. | : : | |

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

Pursuant to Local Rule 5.1, the undersigned counsel hereby certifies that the foregoing pleading was prepared with one of the font and point selections approved by the Court.

This 8th day of June, 2012.

**BROCK, CLAY, CALHOUN & ROGERS, LLC**
Attorney for Plaintiffs

*/s/ Todd E. Hatcher*
Todd E. Hatcher, Esq.
Georgia Bar No. 337507
thatcher@brockclay.com
400 Galleria Parkway
Suite 1440
Atlanta, GA 30339
Telephone: (770) 422-1776
Facsimile: (678) 784-3572

DR. PAM ADAMSON, WANDA     :
SMITH, OPHELIA     :
BURROUGHS, MARY BAKER,     :
DR. ALIEKA ANDERSON and     :
CHARLTON BIVINS, in their     :     CIVIL ACTION
official capacities as members of     :
the Clayton County Board of     :     FILE NO. 1:12-cv-01665-CAP
Education and individually as     :
residents and voters in the Clayton     :
County School District,     :
    :
       Plaintiffs,     :
    :
    :
v.     :
    :
    :
CLAYTON COUNTY     :
ELECTIONS AND     :
REGISTRATION BOARD,     :
ROBERT P. BOLIA, PATRICIA     :
PULLAR, RUTH F. ASH,     :
VIVIAN BALDWIN AND JIM     :
CONSTABLE, in their official     :
capacities as members of the     :
Clayton County Elections and     :
Registration Board,     :
    :
       Defendants.     :

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that a true and correct copy of

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**

**FOR DECLARATORY JUDGMENT AND FINAL INJUNCTIVE RELIEF**

has been served upon counsel for the opposing party in the foregoing matter by

U.S. Mail and by electronic mail, addressed as follows:

> Jack Hancock, Esq.
> jhancock@fmglaw.com
> Freeman, Mathis & Gary
> 100 Galleria Parkway
> Suite 1600
> Atlanta, Georgia 30339

This 8th day of June, 2012.

> **BROCK, CLAY, CALHOUN & ROGERS, LLC**
> Attorney for Plaintiffs
>
> */s/ Todd E. Hatcher*
> Todd E. Hatcher, Esq.
> Georgia Bar No. 337507
> thatcher@brockclay.com
> 400 Galleria Parkway
> Suite 1440
> Atlanta, GA 30339
> Telephone: (770) 422-1776
> Facsimile: (678) 784-3572

1366264_1