# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DR. PAM ADAMSON, WANDA SMITH, OPHELIA BURROUGHS, MARY BAKER, DR. ALIEKA ANDERSON and CHARLTON BIVINS, in their official capacities as members of the Clayton County Board of Education and individually as residents and voters in the Clayton County School District,

    Plaintiffs,

v.

CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH, VIVIAN BALDWIN AND JIM CONSTABLE, in their official capacities as members of the Clayton County Elections and Registration Board,

    Defendants.

CIVIL ACTION

FILE NO. 1:12-cv-01665-CAP

## JOINT STIPULATION OF FACTS

Plaintiffs DR. PAM ADAMSON, WANDA SMITH, OPHELIA BURROUGHS, MARY BAKER, DR. ALIEKA ANDERSON and CHARLTON

1

BIVINS (collectively "Plaintiffs") and the CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH, VIVIAN BALDWIN AND JIM CONSTABLE, in their official capacities as members of the Clayton County Elections and Registration Board (collectively "Defendants"), by and through their respective counsel, stipulate as follows:

1. Plaintiffs filed this action against Defendants[1] on May 11, 2012, seeking declaratory and injunctive relief preventing the future use of Clayton County's malapportioned Board of Education districts ("BOE Districts") and requesting that the Court impose a remedial plan for use in the 2012 election cycle and in all future election cycles unless lawfully amended for elections after 2012.

2. The existing BOE Districts are unconstitutionally malapportioned.

3. Plaintiffs are all residents and citizens of the State of Georgia and of Clayton County, and are registered to vote in school board member and all county elections in Clayton County.

4. The members of the CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD are appointed by the Clayton County Board of

---

[1] Although Plaintiffs originally included the State of Georgia as a Defendant, the State of Georgia was dismissed from this case on May 31, 2012. (Doc. 17).

Commissioners. Each CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD member's term runs concurrent with the Clayton County Commissioner's term of office who appointed them. The CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD was created pursuant to S.B. 360, Act 425 (July 1, 2003).

5. The CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH, VIVIAN BALDWIN and JIM CONSTABLE[2] are the named Defendants. Defendants ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH and VIVIAN BALDWIN (hereinafter referred to as the "Elections Board Members") are the current members of the Clayton County Elections and Registration Board ("Elections Board"), with ROBERT P. BOLIA serving as its current President. The Elections Board Members are sued in their official capacities only.

6. The Elections Board is responsible for conducting elections in Clayton County, Georgia. The Elections Board has the lawful duty to: receive notices of candidacy and qualifying fees from candidates seeking election to the Clayton

---

[2] Jim Constable perished in a fire shortly before Plaintiffs filed the instant action and as of the date of submission of this Joint Stipulation of Facts, his seat on the Elections Board remained vacant.

3

County Board of Education ("BOE"); prepare and publish all notices and advertisements in connection with the conduct of elections; transmit to the Secretary of State a copy of any publication in which a call for an election is issued; prepare, equip and furnish polling places; count all ballots; and certify the results of all elections as prescribed by law.

7. Clayton County has nine (9) BOE districts[3]. DR. PAM ADAMSON resides in and votes in BOE District 1. WANDA SMITH resides in and votes in BOE District 2. JESSIE GOREE resides in and votes in BOE District 3. MICHAEL KING resides in and votes in BOE District 4. OPHELIA BURROUGHS resides in and votes in BOE District 5. MARY BAKER resides in and votes in BOE District 6. TRINIA GARRETT resides in and votes in BOE District 7. DR. ALIEKA ANDERSON resides in and votes in BOE District 8. CHARLTON BIVINS resides in and votes in BOE District 9.

---

[3] Clayton is permitted to have a nine (9) member BOE notwithstanding O.C.G.A. § 20-2-52 since it existed as a nine (9) member BOE as provided by local law prior to July 1, 2010. Consequently, and according to O.C.G.A. § 20-2-52 (b), O.C.G.A. § 20-2-52 does not apply to the Clayton County BOE. Moreover, since Clayton County does not collect a homestead option sales and use tax ("HOST") (See Sales Tax Rate Chart available on the Georgia Department of Revenue's web site at https://etax.dor.ga.gov/salestax/salestaxrates/LGS_2011_Jan_Rate_Chart_Moore.pdf), it is not restricted to being a seven (7) member BOE. *See* O.C.G.A. § 20-2-52.1(a).

8. Pursuant to the results of the 2010 Decennial Census, the population of the various Clayton County BOE Districts has shifted dramatically. As a result, the number of citizens in each BOE district is not equal.

9. The Clayton County BOE Districts, as presently configured, contain approximately the following populations:

| DISTRICT | POPULATION |
|---|---|
| 1 | 37,680 |
| 2 | 30,158 |
| 3 | 26,606 |
| 4 | 21,602 |
| 5 | 24,622 |
| 6 | 32,066 |
| 7 | 25,448 |
| 8 | 26,914 |
| 9 | 34,328 |

10. The nine BOE Districts have not been reapportioned after the 2010 census.

11. The voting strength of District 1, 2, 6 and 9 voters is severely diluted, while voters in Districts 3, 4, 5, 7 and 8 have disproportionate voting strength.

12. Only the Georgia General Assembly can reapportion the BOE districts during a regular or special session. *Perry v. Cobb County Bd. of Elections and Registration,* 314 F.Supp.2d 1274, 1281, 1286 (N.D. Ga. 2002). Barring action by the General Assembly, this Court has the power to enact an interim redistricting plan setting new BOE Districts.

13. The Clayton County BOE itself devised and adopted a redistricting plan (the "BOE Plan") on February 6, 2012, based upon 2010 census results. The BOE plan was presented to the Clayton County delegation of the 2012 General Assembly on or about February 15, 2012.

14. The Court has researched and prepared a proposed remedial map reapportioning the BOE Districts using the 2010 Census results (the "Remedial Plan"). (Doc. 29).

15. The population data for the Remedial Plan from the 2010 Census shows a total population of 259,424 with a corresponding ideal population per District of 28,824 to avoid either diluting or increasing voting strength. The population data summary for the Remedial Plan is attached hereto as Exhibit "A." The evaluation of this population data broken down by district results

in the following deviations from the ideal population per district as proposed by the Court:

| DISTRICT | POPULATION | IDEAL POP. | DEVIATION | DEV. % |
|---|---|---|---|---|
| 1 | 28,766 | 28,824 | -58 | -0.20% |
| 2 | 28,891 | 28,824 | 67 | +0.23% |
| 3 | 28,822 | 28,824 | -2 | -0.01% |
| 4 | 28,873 | 28,824 | 49 | +0.17% |
| 5 | 28,687 | 28,824 | -137 | -0.48% |
| 6 | 28,737 | 28,824 | -87 | -0.30% |
| 7 | 28,822 | 28,824 | -2 | -0.01% |
| 8 | 28,931 | 28,824 | 107 | 0.37% |
| 9 | 28,895 | 28,824 | 71 | 0.25% |

16. Furthermore, the 2010 Census data shows the following black voting age populations ("BVAP") and related data for each of the BOE Districts proposed by the Court:

| DIST. | VAP | BVAP | % BLACK | BLACK COMBO | TOTAL BLACK | % TOTAL BLACK |
|---|---|---|---|---|---|---|
| 1 | 20,021 | 13,191 | 65.89% | 252 | 13,443 | 67.14% |
| 2 | 20,186 | 15,442 | 76.50% | 256 | 15,698 | 77.77% |
| 3 | 20,633 | 15,812 | 76.63% | 226 | 16,038 | 77.73% |
| 4 | 20,569 | 15,022 | 73.03% | 260 | 15,282 | 74.30% |
| 5 | 20,586 | 12,723 | 61.80% | 227 | 12,950 | 62.91% |
| 6 | 21,080 | 12,784 | 60.65% | 227 | 13,011 | 61.72% |
| 7 | 20,336 | 9,088 | 44.69% | 232 | 9,320 | 45.83% |
| 8 | 20,545 | 13,175 | 64.13% | 225 | 13,400 | 65.22% |
| 9 | 20,489 | 11,981 | 58.48% | 256 | 12,237 | 59.72% |

17. Plaintiffs and Defendants have no objection to the Remedial Plan.

18. The 2012 regular session of the General Assembly has ended, no reapportionment plan for the Clayton County BOE Districts has been adopted and no special session for the purpose of reapportioning these districts has been called by the Governor.

19. Absent the relief sought herein, the Elections Board must accept qualifications of candidates for BOE positions using the current district boundaries.

20. Plaintiffs provided notice to the members of the voting public of their right to seek to intervene in this case by giving notice of same in the Clayton Daily News on June 20, 22 and 23, 2012. The foregoing notice also informed the members of the voting public that the Court's proposed Remedial Plan could be inspected and the date and location for the final hearing in this case. A true and accurate copy of the notice is attached hereto as Exhibit "B."

21. Plaintiffs and Defendants furnished copies of the Remedial Plan with supporting data (all of which is found in Doc. 29) for inspection by the members of the voting public by placing same at the Elections Board office and the BOE office. In addition, the Court made same available at the Clerk's office.

22. Assuming the Court approves a new BOE District map no later than July 15, 2012, the election cycle for the BOE elections will proceed as follows:

| Task | Date |
|---|---|
| Elections Board Issues Notice of Election and Qualifying (advertise in legal organ) | No later than July 20, 2012 |
| Elections Board Conducts Qualifying (2-1/2 days) | 9am, July 30 – Noon, August 1, 2012 |
| Input official new district into State Voter Registration "Production" System immediately after certification of General Primary Runoff | August 27, 2012 |
| Elections Board submits Ballot information to State Ballot Builder for generation of the Ballot.<br><br>Ballot submitted with candidates for General Election | No later than August 30, 2012 |
| Write-In Candidates file Notice of Intent with Elections Superintendent and Publish such Notice in the County's Legal Organ | No later than September 4, 2012 |
| Write-In Candidates File Affidavit of Publication and Copy of Published Notice with Elections Superintendent | No later than September 10, 2012 |
| Receive Absentee Ballots from Vendor | No later than September 14, 2012 |
| Mail Absentee Ballot Voting Period | September 21 – November 2, 2012 |
| Last day to Notify Voters of Boundary Line Changes, if any | October 5, 2012 |
| Last day to Register to Vote | October 9, 2012 |
| In-Person Absentee Voting Period (including October 27, 2012 for Saturday Voting) | October 15, 2012 – November 2, 2012 |
| Special Election Date in conjunction with General Election | October 15, 2012 – November 2, 2012 |
| General Election | November 6, 2012 |
| Special Election Runoff Date in conjunction with General Runoff | December 4, 2012 |

23. Unless new BOE district boundary lines are established prior to the upcoming qualifying period and elections, candidates for the BOE will qualify from unconstitutionally malapportioned districts, in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

24. Plaintiffs have no adequate remedy at law and no other way to guarantee their rights in connection with the upcoming candidate qualifying and election of BOE members, other than through the relief sought in this lawsuit.

25. Plaintiffs will suffer irreparable harm if candidate qualifying and the election are allowed to proceed under the current BOE district boundary lines, and the injury will continue until the existing lines are declared to be unconstitutionally malapportioned and their use enjoined.

26. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (1) and (2).

27. Defendants all reside and/or function as entities within the Northern District of Georgia and are subject to personal jurisdiction in this Court.

28. Plaintiffs are entitled to declaratory judgment that, as a result of the data now available from the 2010 census, the BOE districts are unconstitutionally malapportioned, as Defendants have conceded.

29. Leaving the existing BOE district lines in place with their imbalances in population deprives voters of the benefit of the one person, one vote principle of the Equal Protection Clause. Therefore, Plaintiffs are also entitled to injunctive relief, barring the use of the current BOE districts for the 2012 election cycle and beyond, unless the BOE districts are lawfully amended for use in elections following the 2012 cycle.

30. As for the remedial relief requested by Plaintiffs, i.e., imposition of a plan by this Court, the Plaintiffs are also entitled to that relief. The General Assembly has failed to act on a plan which provided for BOE districts that are constitutionally proportioned. Therefore, unless this Court adopts a remedial plan, there will not be a constitutionally apportioned plan for use in the 2012 elections for the BOE district members of the BOE which is based on the 2010 census and which meets the requirements of the state and federal law.

31. Under Section Five of the Voting Rights Act, certain states, including Georgia, are prohibited from enforcing "any voting qualification or

prerequisite to voting, or standard, practice, or procedure with respect to voting" unless they have either (1) obtained a declaratory judgment from the District Court for the District of Columbia that the change is not "for the purpose or with the effect of denying or abridging the right to vote on account of race or color," or (2) submitted the proposed change to the Attorney General for "preclearance" and the change has been so precleared. 42 U.S.C. §§ 1973b-1973c.

32. Section Two of the Voting Rights Act prohibits States from imposing or applying any voting practice or procedure that dilutes, denies, or abridges the right of any citizen of the United States to vote, on account of that citizen's race or color. 42 U.S.C. § 1973; *see also Thornburg v. Gingles,* 478 U.S. 30, 36, 106 S. Ct. 2752, 92 L.Ed.2d 25 (1986).

33. In analyzing whether a particular apportionment plan complies with Section Two, a court must consider whether, under the totality of circumstances, minorities have been granted an equal opportunity to participate in the political process and to elect representatives of their choice. 42 U.S.C. § 1973(b); *see also Abrams v. Johnson,* 521 U.S. 74, 91, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997).

34. The most important goal in fashioning a remedial plan is to minimize the population deviations among the BOE districts, while also respecting the traditional districting principles of compactness, contiguity, the preservation of the core of the existing BOE districts, and the preservation of significant political and geographic subdivisions, whenever possible. *See Abrams v. Johnson,* 521 U.S. 74, 95, 117 S. Ct. 1925, 138 L.Ed.2d 285 (1997) (slight deviations in population equality in court-ordered plans are justified in furtherance of significant state policies or unique features). Where school board redistricting is involved, the court also takes into consideration adherence as much as possible to the school attendance zones in creating districts. *See Smith v. Cobb County Bd. Of Elections and Registrations,* 314 F. Supp.2d 1274, 1307 (N.D. Ga. 2002). Further, small differences in the populations of districts may be justified if doing so preserves cores of prior districts or avoids contests between incumbents. *Karcher v. Daggett,* 462 U.S. 725, 740 (1983). Protecting incumbents from being drawn out of their existing districts such that they would have to run for election against other incumbents has traditionally been a priority in Georgia redistricting. *Perry,* 314 F. Supp.2d at 1307.

35. That a court must not act as a rubber stamp does not mean, however, that the court cannot consider the BOE proposed plan, just as it considers any other plans submitted to it. Moreover, as long as the district court makes an independent, *de novo* decision as to the appropriate remedial plan, such that the plan is the court's own, its plan does not have to be precleared, even if it turns out to greatly resemble the proposed legislative plan. *See Perry,* 314 F. Supp.2d at 1295; *Johnson v. Miller,* 922 F. Supp. 1556, 1569 (S.D.Ga. 1995) (noting that fact that court's remedial plan may have resembled proposed legislative plan did not mean that plan was not the court's own; the court necessarily had to rely on legislative plans to determine how the latter had maintained district cores and communities of interest).

36. Section Five's preclearance mechanism does not apply to courts in creating remedial apportionment plans such as is involved in the instant action. *Connor v. Johnson,* 402 U.S. 690, 691, 91 S. Ct. 1760, 29 L.Ed.2d 268 (1971).

37. In fashioning a remedial plan, "a court should follow the appropriate Section Five standards, including the body of administrative and judicial

precedents developed in Section Five cases." *McDaniel,* 452 U.S. at 149, 101 S. Ct. 2224; *see also Abrams,* 521 U.S. at 95, 117 S. Ct. 1925.

38. In order to comply with Section 5 of the Voting Rights Act, a change in voting districts must not create retrogression in minority voting strength. *Smith,* 314 F. Supp.2d at 1293-94.

So stipulated this 28th day of June, 2012.

| | |
|---|---|
| /s/ Todd E. Hatcher | /s/ Jack R. Hancock* |
| Todd E. Hatcher | Jack R. Hancock |
| Ga. Bar No. 337507 | Ga. Bar No. 322450 |
| thatcher@brockclay.com | jhancock@fmglaw.com |
| Brock, Clay, Calhoun & Rogers, LLC | Freeman, Mathis & Gary, LLP |
| 400 Galleria Parkway | 661 Forest Parkway |
| Suite 1440 | Suite E |
| Atlanta, Georgia 30339 | Forest Park, Georgia 30297 |
| (770) 422-1776 (telephone) | (404) 366-1000 (telephone) |
| (770) 426-6155 (facsimile) | (404) 361-3223 (facsimile) |
| *Counsel for Plaintiffs* | *Counsel for Defendants CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH AND VIVIAN BALDWIN* |
| | *BY TEH WITH EXPRESS PERMISSION. |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. PAM ADAMSON, WANDA SMITH, OPHELIA BURROUGHS, MARY BAKER, DR. ALIEKA ANDERSON and CHARLTON BIVINS, in their official capacities as members of the Clayton County Board of Education and individually as residents and voters in the Clayton County School District, | CIVIL ACTION FILE NO. 1:12-cv-01665-CAP |
| Plaintiffs, | |
| v. | |
| CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH, VIVIAN BALDWIN AND JIM CONSTABLE, in their official capacities as members of the Clayton County Elections and Registration Board, | |
| Defendants. | |

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

Pursuant to Local Rule 5.1, the undersigned counsel hereby certifies that the foregoing pleading was prepared with one of the font and point selections approved by the Court.

This 28th day of June, 2012.

        **BROCK, CLAY, CALHOUN & ROGERS, LLC**
        Attorney for Plaintiffs

        */s/ Todd E. Hatcher*
        Todd E. Hatcher, Esq.
        Georgia Bar No. 337507
        thatcher@brockclay.com
        400 Galleria Parkway
        Suite 1440
        Atlanta, GA 30339
        Telephone: (770) 422-1776
        Facsimile: (678) 784-3572

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DR. PAM ADAMSON, WANDA SMITH, OPHELIA BURROUGHS, MARY BAKER, DR. ALIEKA ANDERSON and CHARLTON BIVINS, in their official capacities as members of the Clayton County Board of Education and individually as residents and voters in the Clayton County School District, | CIVIL ACTION<br><br>FILE NO. 1:12-cv-01665-CAP |
| Plaintiffs, | |
| v. | |
| CLAYTON COUNTY ELECTIONS AND REGISTRATION BOARD, ROBERT P. BOLIA, PATRICIA PULLAR, RUTH F. ASH, VIVIAN BALDWIN AND JIM CONSTABLE, in their official capacities as members of the Clayton County Elections and Registration Board, | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

1

The undersigned does hereby certify that a true and correct copy of **JOINT STIPULATION OF FACTS** has been served upon counsel for the opposing party in the foregoing matter by U.S. Mail and by electronic mail, addressed as follows:

Jack Hancock, Esq.
jhancock@fmglaw.com
Freeman, Mathis & Gary
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339

This 28th day of June, 2012.

**BROCK, CLAY, CALHOUN & ROGERS, LLC**
Attorney for Plaintiffs

*/s/ Todd E. Hatcher*
Todd E. Hatcher, Esq.
Georgia Bar No. 337507
thatcher@brockclay.com
400 Galleria Parkway
Suite 1440
Atlanta, GA 30339
Telephone: (770) 422-1776
Facsimile: (678) 784-3572

1380241_1